## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDDIE CULVER,<br><br>           Plaintiff,<br><br>    v.<br><br>PROTEOSTASIS THERAPEUTICS, INC.,<br>DAVID ARKOWITZ, FRANKLIN<br>BERGER, MEENU CHHABRA, BADRUL<br>A. CHOWDHURY, KIM COBLEIGH<br>DRAPKIN, EMMANUEL DULAC, and<br>JEFFERY W. KELLY,<br><br>           Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### BACKGROUND

1.      This action concerns a proposed transaction announced on August 24, 2020, pursuant to which Proteostasis Therapeutics, Inc. ("PTI" or the "Company") will merge with Yumanity Therapeutics, Inc. ("Yummanity") ("Proposed Transaction").

2.      On August 22, 2020, the Board of Directors of PTI (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement"), pursuant to which PTI will acquire all outstanding shares of Yumanity in exchange for newly-issued shares of PTI common stock (the "Merger Consideration"). Upon completion of the proposed acquisition, it is anticipated that existing PTI shareholders will own approximately 32.5% of the combined company and Yumanity shareholders

will own approximately 67.5% of the combined company.

3.      On September 23, 2020, in order to convince PTI's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of PTI's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so PTI stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a PTI shareholder.

10.      Defendant PTI is a Delaware corporation and a party to the Merger Agreement. PTI shares are traded on the NASDAQ under the ticker symbol "PTI."

11.      Defendant David Arkowitz is a director of the Company.

12.      Defendant Franklin Berger is Chairman of the Board of the Company.

13.      Defendant Meenu Chhabra is Chief Executive Officer and a director of the Company.

14.      Defendant Badrul A. Chowdhury is a director of the Company.

15.      Defendant Kim Cobleigh Drapkin is a director of the Company.

16.      Defendant Emmanuel Dulac is a director of the Company.

17.      Defendant Jeffery W. Kelly is a director of the Company.

## FACTS

18.      PTI is a clinical stage biopharmaceutical company committed to the discovery and development of novel therapeutics to treat cystic fibrosis, through theratyping, or the process of matching modulators to individual response to treatment regardless of CFTR mutations.

19.     Yumanity is a clinical stage biopharmaceutical company dedicated to accelerating the revolution in the treatment of neurodegenerative diseases. Neurodegenerative diseases cause a progressive loss of structure and function in the brain, leaving patients with devastating damage to their nervous system and widespread functional impairment.  Yumanity is specifically focused on developing novel disease-modifying therapies to treat devastating conditions, either with large or orphan disease markets, including Parkinson's disease, dementia with Lewy bodies, multiple system atrophy, or MSA, amyotrophic lateral sclerosis, or ALS (also known as Lou Gehrig's disease), frontotemporal lobar degeneration, or FTLD, and Alzheimer's disease.

20.     On August 22, 2020, PTI's Board caused the Company to enter into the Merger Agreement.

21.     The Merger Agreement provides that PTI has agreed with Yumanity, a Delaware corporation, Pangolin Merger Sub, Inc., a Delaware corporation and wholly-owned subsidiary of PTI ("Merger Sub"), and Yumanity Holidings, LLC, a Delaware limited liability company ("Holdings"). Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, Merger Sub will be merged with and into Yumanity with Yumanity surviving as a wholly-owned subsidiary of PTI (the "Merger").  Immediately prior to the consummation of the Merger, Holdings will merge with and into the Yumanity. All securities of Holdings will be converted into and become securities of Yumanity, and there will no longer be any securities of Holdings outstanding at the effective time of the Merger.

22.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

(ii) subject to Section 1.5(c), each share of [Yumanity] Common Stock outstanding immediately prior to the Effective Time (excluding shares to be canceled pursuant to Section 1.5(a)(i) and excluding Dissenting Shares) shall be converted solely into the right to receive a number of shares of PTI Common Stock equal to the Exchange

Ratio.

23.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25.     Section 4.5 of the Merger Agreement has a "no solicitation" clause that prevents PTI from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a) From and after the date of this Agreement until the earlier of the Effective Time or the date, if any, on which this Agreement is terminated pursuant to Article 9, each Party agrees that neither it nor any of its Subsidiaries shall, and each Party will use its reasonable best efforts to cause each of its officers, directors, employees, investment bankers, attorneys, accountants, Representatives, consultants or other agents retained by it or any of its Subsidiaries not to, directly or indirectly: (i) solicit, initiate, knowingly encourage, induce or knowingly facilitate the communication, making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry or take any action that could reasonably be expected to lead to an Acquisition Proposal or Acquisition Inquiry; (ii) furnish any nonpublic information regarding such Party to any Person in connection with or in response to an Acquisition Proposal or Acquisition Inquiry; (iii) engage in discussions (other than to inform any Person of the existence of the provisions contained in this Section 4.5) or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry; (iv) approve, endorse or recommend any Acquisition Proposal (subject to Section 5.2 and Section 5.3); or (v) execute or enter into any letter of intent or similar document or any Contract contemplating or otherwise relating to any Acquisition Transaction (other than a confidentiality agreement permitted as provided below); provided, however, that, notwithstanding anything contained in this Section 4.5(a), prior to the adoption and approval of this Agreement by a Party's stockholders (i.e., the Required PTI Stockholder Vote in the instance of PTI), such Party may furnish nonpublic information regarding such Party to, and enter into discussions or negotiations with, any Person in response to a bona fide written Acquisition Inquiry or Acquisition Proposal, which such Party's Board of Directors determines in good faith, after consultation with its independent financial advisor, if any, and its outside legal counsel, constitutes, or would reasonably be expected to result in, a Superior Offer if: (A) neither such Party nor any Representative of such Party shall have breached this Section 4.5 in any material respect with respect to such Acquisition

Inquiry or Acquisition Proposal (B) the Board of Directors of such Party concludes in good faith based on the advice of outside legal counsel, that the failure to take such action would reasonably be expected to be inconsistent with the fiduciary duties of the Board of Directors of such Party under applicable Legal Requirements; (C) prior to furnishing any such nonpublic information to, or entering into discussions with, such Person, such Party gives the other Party written notice of the identity of such Person and of such Party's intention to furnish nonpublic information to, or enter into discussions with, such Person; (D) such Party receives from such Person an executed confidentiality agreement containing provisions at least as favorable to such Party as those contained in the Confidentiality Agreement (and a copy of any such executed confidentiality agreement is provided promptly to the other Party); provided that a standstill provision shall be required only to the extent that the failure to include such standstill provision is likely to be inconsistent with the fiduciary duties of the Board of Directors of such Party under applicable Legal Requirements; and (E) at least two (2) Business Days prior to furnishing any such nonpublic information to such Person, such Party furnishes such nonpublic information to the other Party (to the extent such nonpublic information has not been previously furnished by such Party to the other Party). Without limiting the generality of the foregoing, each Party acknowledges and agrees that, in the event any Representative of such Party (whether or not such Representative is purporting to act on behalf of such Party) takes any action that, if taken by such Party, would constitute a breach of this Section 4.5 by such Party, the taking of such action by such Representative shall be deemed to constitute a breach of this Section 4.5 by such Party for purposes of this Agreement.

26.     In addition, Section 19.3 of the Merger Agreement requires PTI to pay a $2,100,000 "termination fee" in the event this agreement is terminated by PTI and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to PTI's ability to consider other offers.

27.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

28.     As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

29.     First, the Registration Statement omits material information regarding PTI's and Yumanity's financial projections.

30.     With respect to PTI, the Registration Statement omits entirely PTI's financial projections. The disclosure of PTI's projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.

31.     Any analysis of PTI as a standalone entity is made impossible by the complete omission of the Company's financial projections. Without such information, stockholders are left to guess at the actual value of both the PTI and Yumanity stock which together form the consideration being rendered in the Proposed Transaction. Defendants' assertions and assumptions concerning the value of such PTI stock are thus rendered materially incomplete and misleading as a result.

32.     With respect to Yumanity's financial projections, the Registration Statement fails to disclose all line items used to calculate gross profit, operating income, net income, and unlevered free cash flow.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

33.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

34.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor MTS Securities, LLC ("MTS") in connection with the Proposed Transaction.

35.     With respect to MTS's *Liquidation Analysis of PTI*, the Registration Statement fails to include (i) PTI's basis for directing that the analysis (a) assume that PTI does not currently, and

does not intend in the future to, conduct any activity that may result in the generation of revenue and (b) not consider whether the events set forth in the contingent value rights agreement may occur, (ii) PTI's financial projections, and (iii) the availability of financing to support PTI's ongoing operations.  This information must be disclosed to make the Registration Statement not materially misleading to PTI stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to MTS's *Discounted Cash Flow Analysis of Yumanity*, the Registration Statement fails to include: (i) PTI's basis for directing that the analysis assume (a) cash flows payable to Yumanity of $31,000,000 from Yumanity's collaboration and licensing agreement with Merck, (b) regulatory probabilities of success during Phase I with respect to Yumanity's lead asset of 30% to 70%, (c) regulatory probabilities of success during Phase II with respect to Yumanity's lead asset of 20% to 60%, and (d) an addressable market for Yumanity's lead asset equal to 9% to 17%; (ii) MTS's basis for applying a weighted average cost of capital of 12% to 16%; (iii) MTS's basis for assuming no terminal value, and (iv) the applied discount rates.  This information must be disclosed to make the Registration Statement not materially misleading to PTI stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to MTS's *Trading Comparable Analysis of Yumanity*, the Registration Statement fails to include: (i) the estimated number of fully diluted shares and total cash and cash equivalents for the companies observed in the analysis, (ii) MTS's assumptions for selecting each of the companies observed; and (iii) the individual metrics for each company observed.  This information must be disclosed to make the Registration Statement not materially misleading to PTI stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to MTS's *IPO Comparables Analysis of Yumanity*, the Registration

Statement fails to include: (i) the individual metrics used to derive the pre-money enterprise valuations for the companies observed in the analysis, and (ii) MTS's assumptions for selecting each of the companies observed.

39.     This information must be disclosed to make the Registration Statement not materially misleading to PTI stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     Third, The Registration Statement provides that the Company entered into confidentiality with Parties E, F, G and Yumanity, each entered into a new confidentiality agreement with a standstill clause. Such agreements did not include a "don't ask/don't waive" provision, and two agreements (those with Yumanity and Party F) had a fallaway provision.  However, the exact terms of these confidentiality agreements, including the terms of the standstill clauses and fallaway provisions and why fallaway provisions were omitted in two agreements, are undisclosed.  Without further information regarding the terms of these agreements, and the terms of the standstill provisions, including whether those provisions have fallen away up or are still in effect, Company stockholders are unable to properly evaluate the ability of these parties that earlier expressed interest in acquiring the Company to offer them a better deal.  If the confidentiality agreements contained standstill provisions – and especially if they contained DADW provisions – then those counterparties have been and will be hindered or even completely precluded from making a superior proposal. The extent of such hindrances is material information of which the stockholders must be informed before voting on the Proposed Transaction.  The omission of this information renders the descriptions of the confidentiality agreements the Company entered into materially incomplete and misleading, as the failure to disclose the existence of standstill and/or DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could make a superior proposal.

41.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

## COUNT I

## (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or

directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

47.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

48.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

53.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 15, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*